IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN SHAGES, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-CV-5395 |
| | ) | |
| MDSCRIPTS INC., a Florida corporation, | ) | Judge Joan B. Gottschall |
| and GARY MOUNCE, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Plaintiff Joan Shages ("Plaintiff") has not pleaded allegations sufficient to sustain a claim against individual defendant Gary Mounce ("Mounce"). Additionally, her claims brought under the Illinois Wage Payment and Collection Act ("IWPCA") at Count IV cannot proceed because Plaintiff does not sufficiently allege an underlying employment contract or agreement. Even if the Court finds a sufficiently pleaded employment agreement, Plaintiff's breach of contact claims against both Mounce and MDScripts Inc. ("MDScripts") (collectively, "the Defendants") at Count VI are preempted by the Fair Labor Standards Act ("FLSA") and her related claims under the IWPCA. As such, these aspects of her complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**BACKGROUND**[1]

Plaintiff alleges she was employed by MDScripts between June 2015 and January 24, 2018 as a "relationship/account manager, a trainer and help desk agent" and was not paid monies owed

---

[1] For purposes of this motion and memorandum only, Defendants will assume the factual allegations in Plaintiff's Complaint are true.

to her under her employment contract. Complaint ¶ 1. She also alleges that, between July 31, 2015 and January 24, 2018, she was classified as a non-exempt hourly employee and not paid overtime in violation of the FLSA, the Illinois Minimum Wage Law ("IMWL"), and the IWPCA. All of her unpaid wage claims arise from the same common nucleus of operative facts.

Plaintiff filed her Complaint against MDScripts and MDScripts' President, Gary Mounce, on August 8, 2018. Mounce is named individually in Plaintiff's Complaint. The Complaint alleges that Mounce "exercised operational control over [MDScripts'] employees, including Joan, and had the power to hire and fire them, the ability to supervise, and the power to set wages for them." Complaint ¶ 3. Other than this barebones recitation, Plaintiff's Complaint fails to demonstrate that Mounce was Plaintiff's "employer," as that term is defined in the FLSA, the IMWL, and the IWPCA. Complaint ¶ 4. As such, the Complaint fails to state a claim for which relief may be granted against Mounce, and Mounce must be dismissed as a party to this action.

Additionally, Plaintiff has insufficiently pled a claim for breach of contract, as she has only alleged incomplete payment of a discretionary bonus, which is insufficient to form such a claim or a related claim under the IWPCA. Moreover, even if her pleadings regarding a breach of contract are sufficient, by asserting a common law breach of contract claim, Plaintiff is attempting to circumvent the procedures required by and the remedies offered under the FLSA. Because the FLSA is the exclusive remedial scheme for the allegations made in her breach of contract claim, Plaintiff's breach of contract claim must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires a Court to dismiss a cause of action that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In addition to providing the defendant fair notice of what the claim is and the grounds upon which it rests,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). Thus, to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

While the court accepts well-pleaded facts in the complaint as true, legal conclusions and conclusory factual allegations which merely recite the elements of the claim are not presumptively true. *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011). As such, "a complaint must allege facts bearing on all material elements 'necessary to sustain a recovery under some viable legal theory,'" *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir. 1999) (quoting *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998)), and must contain enough facts to state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I. PLAINTIFF DOES NOT ALLEGE FACTS DEMONSTRATING THAT GARY MOUNCE WAS PLAINTIFF'S "EMPLOYER."

Plaintiff did not adequately plead facts sufficient to establish Mounce as an "employer" under the FLSA or Illinois wage and hour law. Plaintiff's Complaint does not sufficiently allege that Mounce was her "employer" under the FLSA at any time material to the alleged violations. The FLSA defines an "employer" as ". . . any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203. Consistent with this breadth, an employer can be either a company or an individual. *Id.* § 203(a).

The proper test for determining whether an individual is an employer for purposes of liability under the FLSA is "to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee *in a manner that caused the FLSA violation* (at least in part)." *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d. 690, 698 (N.D. Ill. 2015) (emphasis added). The mere fact of Mounce's power to hire and fire employees, his ability to supervise, and his power to set wages for employees does not also mean that Mounce did in fact hire and fire Plaintiff, supervise her, or set her wages. Admittedly, Plaintiff does allege that Mounce offered her the position at MDScripts in the spring of 2014. Complaint ¶ 16. But nothing about the two other discrete mentions of Mounce at Paragraphs 23 ("announced a new bonus") and 29 (another manager warned her about Mounce) suggest that Mounce was in any way actively engaged in the actions or decisions bringing about Plaintiff's FLSA claims. As such, Mounce must be dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted for the alleged violations under the FLSA.

Nor does Plaintiff's Complaint sufficiently allege that Mounce was her "employer" under the IMWL or IWPCA at any time material to the alleged violations. The IMWL and IWPCA mirror the language of the FLSA and define an "employer" as ". . . any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee . . ." 820 ILCS 105/3; 820 ILCS 115/2. As such, for the previously stated reasons, Mounce must be dismissed from this action for failure to state a claim upon which relief may be granted for the alleged violations of Illinois's wage laws, as Mounce, in his individual capacity, was not Plaintiff's

employer and Plaintiff fails to satisfy her burden to demonstrate that she is entitled to relief, beyond mere labels and legal conclusions.[2]

## II. PLAINTIFF'S BREACH OF CONTRACT AND RELATED IWPCA ALLEGATIONS DO NOT ESTABLISH A CAUSE OF ACTION.

Plaintiff has not adequately pled a breach of contract claim. Plaintiff has alleged that she wanted to earn $75,000 a year, but accepted a position that paid her $60,000 when she was informed that the difference would be made up in raises, bonuses and profit sharing "*if earned.*" (emphasis added). Complaint ¶ 19. Her Complaint further indicates that her breach of contract claim also relies upon a 2015 performance based bonus plan she was "confident" she would earn. Complaint ¶¶ 23, 78. Both the "if earned" statement alleged as part of her initial offer and the framing of the alleged 2015 performance bonus plan—which Plaintiff "was confident that her superior performance" would earn her—are inherently discretionary by Plaintiff's own description.

A discretionary bonus, as alleged by Plaintiff in her Complaint, does not create a contractual obligation. *See Lillien v. Peak6 Investments*, L.P., 417 F.3d 667, 670 (7th Cir. 2005) (affirming summary judgment on a breach of contract claim regarding a $150,000 discretionary bonus where employment letter stated that employee would be "eligible for a year-end discretionary bonus . . . based both on the profitability of the company and your contributions to the company's success"). *See also Collins v. Associated Pathologists, Ltd.*, 676 F. Supp. 1388, 1408–09 (C.D. Ill. 1987) (finding bonus discretionary where employment contract stated that plaintiff's compensation "shall consist of a basic salary with or without supplementation by way of bonuses, special awards or allowances"); *Cresswell v. Bausch & Lomb, Inc.*, 1986 WL 13528,

---

[2] Additionally Mounce cannot sustain a claim for breach of the FLSA exceeding the two year statute of limitations for wage claims (or three years if MDScripts' conduct is found to be willful in nature), or the three year limitation under the IMWL. See 29 U.S.C. § 255(a); 820 ILCS 105/2(a).

at *5–*6 (N.D. Ill. Nov. 21, 1986) (granting summary judgment for employer where employee was told that he would be "eligible to participate" in the company's bonus plan depending upon his handling of the German office, his efforts in signing up dealers, and his ability to meet job objectives). In *Lillien*, Seventh Circuit took care to distinguish the situation from that faced in *Tidwell v. Toyota Auto Mart, Inc.*, 375 N.E.2d 540, 543 (1978), noting that while a discretionary bonus could be the basis for a claim of a bonus of some kind, it does not stand as a claim of a bonus for a specific amount. *Lillien*, 417 F.3d at 670.

Here, Plaintiff pleads no facts evidencing any such contract or agreement. Rather, Plaintiff simply alleges in conclusory fashion since there was an "agreement" that the difference between the $75,000 a year base salary she was seeking and the one they offered that the difference would be "made up in in bonuses and profit sharing" stating "compensation would never be an issue at MDScripts and that "'raises, bonuses and profit sharing were frequent and generous if earned.'" Complaint ¶¶ 19, 77, 78. The critical language in the allegation, while ignored in Count VI of the Complaint, is that the difference would only be made up "if earned." *If earned* is the very definition of a discretionary statement. Further, she alleges that at an "April 2015 company retreat in Chicago, Defendant Mounce announced a new bonus plan that was based on performance. Because Joan was confident that her superior performance was in the range of Mr. Mounce's new compensation plan where she would be rewarded, Joan did not push the issue of her 2014 compensation." Complaint ¶ 23. Consistent with the reasoning in *Lillien*, the facts alleged would at most a contract for *a* bonus, not a bonus of any particular amount or kind. Plaintiff's Complaint confirms that she received a bonus each year of her employment. Complaint, Exhibit A, pp. 3–4.

Without adequately pleading the existence of a contract, Plaintiff's claims under the IWPCA could only rely on her overtime claims. Those claims, however, must also fail. The

IWPCA provides for the payment to employees of "wages," but only if required under "an employment contract or agreement between the 2 parties[.]" 820 Ill. Comp. Stat. 115/2. Plaintiff's IWPCA claim fails to state a claim because she does not sufficiently allege this requisite "employment contract or agreement" with Defendants. Indeed, she pleads no facts at all evidencing any such employment contract or agreement. This manner of conclusory allegations is insufficient to support an agreement let alone a claim under the IWPCA.

Thus, "the IWPCA mandates overtime pay (or any other kind of wage) only to the extent that the parties' contract or agreement requires such pay." *See DeMarco v. Northwestern Mem'l Healthcare,* 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011) (explaining that "[u]nlike FLSA and IMWL, IWPCA does not establish a substantive right to overtime pay"); *see also Stark v. PPM America, Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (rejecting IWPCA claim because it was not brought pursuant to an employment contract or agreement); *Smith v. C.H. James Restaurant Holdings, L.L.C.*, 2012 WL 255806, at *2 (N.D. Ill. Jan. 26, 2012) ("To conclude that [plaintiff] had some sort of informal agreement with Defendants merely by working for them would render moot the rule that the IWPCA does not provide an independent substantive right to pay absent some agreement.").

Moreover, in evaluating whether such a contract or agreement exists, courts have made clear that the FLSA and the IMWL cannot constitute an "implied" contractual term or otherwise qualify as the predicate for an IWPCA contract or agreement. *See, e.g.*, *Palmer v. Great Danes Trailers*, 2005 WL 1528255, at *4 (N.D. Ill. June 28, 2005) ("[T]he correct route for [plaintiff] to obtain earned pay, including potential overtime pay, is through timely FLSA and IMWL claims."). Not only must plaintiffs establish an employment contract or agreement under the IWPCA, they must prove their employer agreed to compensate them for the specific "work" at issue. *See*

*DeMarco*, 2011 WL 3510896, at *6 (rejecting IWPCA claim absent evidence of an agreement requiring compensation for hours worked but not recorded). Courts have dismissed IWPCA allegations of this kind, built on conclusory allegations of this kind. *See, e.g.*, *Brand v. Comcast Corp.*, 2013 WL 1499008, at *6 (N.D. Ill. Apr. 11, 2013) (dismissing IWPCA claims noting the proper avenue for overtime claims is the IMWL and FLSA holding "there is no indication . . . that the Illinois legislature or courts have considered the IWPCA an appropriate mechanism for enforcing the overtime wage laws."). As such, Plaintiff's breach of contract claim and claims alleging a violation of the IWPCA should be dismissed with prejudice.

### III. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS PREEMPTED BY THE FLSA.

Even if the Court finds the Complaint adequately states a breach of contract claim, Plaintiff's state common law claim for breach of contract is substantively preempted by the FLSA, and therefore cannot proceed against Defendants.

Plaintiff's state law claim obstructs an FLSA remedial scheme that Congress intended to be exclusive. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 467 (E.D.N.Y. Feb. 10, 2011) ("[T]hrough the comprehensive remedial scheme, Congress struck the intended balance between the purpose of the FLSA and the vindication of its provisions, and therefore allowing additional remedies for duplicative claims would serve as an obstacle to the enforcement of the FLSA."). State law claims obstructing the application and enforcement of a comprehensive federal statutory scheme like the FLSA are preempted under an obstacle, or "implied," preemption theory. Implied preemption "occurs when the structure and purpose of federal law shows Congress's intent to preempt state law." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010); *see Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192–93 (4th Cir. 2007) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)) (describing obstacle preemption as "whether the state

law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law"). In the FLSA context, where the factual and legal grounds of a state law claim are based on or intertwined with violations of rights provided under the FLSA, as is the case here, such state law claims are preempted so that the remedies, procedures, and other enforcement apparatuses that Congress established in the FLSA will not be obstructed. *Anderson*, 508 F.3d at 193–94.

"Congress prescribed exclusive remedies in the FLSA for violations of it mandates." *Id*. at 192; *see Roman v. Maietta Const., Inc.* 147 F.3d 71, 76 (1st Cir. 1998) (explaining that "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA"); *Petras v. Johnson*, 1993 WL 228014, at *2 (S.D.N.Y. June 22, 1993) (observing that "courts have consistently held that [the FLSA] is the exclusive remedy for enforcing the rights" it creates). Specifically, the FLSA "provides an unusually elaborate scheme," embodying a "careful blend of administrative and judicial enforcement powers" that includes:

> Criminal penalties for willful violators of the minimum wage and overtime provisions; a private right of action permitting employees to sue in federal or state court to recover unpaid minimum wage and overtime compensation, liquidated damages, attorneys' fees, and costs; and authorization for the Secretary of Labor to supervise payment of unpaid compensation due under the Act to bring actions for compensatory and injunctive relief for violations of the Act's minimum wage and overtime provisions . . .

*Anderson*, 508 F.3d at 192; *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1989); *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F. Supp. 1027, 1029 (N.D. Cal. 1972) (declaring that FLSA's remedial framework is such that "a clearer case of implied intent to exclude other alternative remedies by the provision of the one would be difficult to conceive"). Due to its comprehensive nature, the FLSA provides the sole and exclusive relief for violations of its substantive provisions, and it preempts state common law claims that intrude upon this exclusivity. *See Anderson*, 508 F.3d at 192.

Recognizing the FLSA's preemptive effect, numerous courts—including several in this jurisdiction— have held that the FLSA precludes state common law claims arising from or based

9

upon rights protected by the FLSA. *See, e.g.*, *Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, at *14–*16 (N.D. Ill. Oct. 4, 2010); *Kyriakoulis v. DuPage Health Center, Ltd.*, 2011 WL 2420201, at *1–*2 (N.D. Ill. June 9, 2011); *Sorenson v. CHT Corp.*, 2004 WL 442638, *5–*7 (N.D. Ill. Mar. 10, 2004) (holding common law claims preempted by FLSA).

Here, Count VI of Plaintiffs' Complaint—asserting a state common law claim for breach of contract—is based on rights established by the FLSA and, therefore, is preempted by the FLSA's comprehensive remedial scheme. *See Anderson*, 508 F.3d at 193–95; *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227–28 (D. Utah 2002) (dismissing claims for "conversion, unjust enrichment, fraud by material omission, fraud by affirmative misrepresentation, negligent misrepresentation, gross negligence, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress" because these common law claims were "based on the same facts and circumstances as [Plaintiff's] FLSA claims"). As Plaintiff's own complaint demonstrates, the breach of contract claim arises from the alleged underpayment of wages and/or overtime, which impacts rights, remedies, and procedural protections embodied within the FLSA. It is telling that the prayer for relief for both her FLSA claim ("unpaid minimum wages and overtime wages) and breach of contract claim ("unpaid wages) are nearly identical. Complaint, Prayer for Relief.

## CONCLUSION

For all the reasons stated above, Defendant Gary Mounce respectfully requests that the Court dismiss him from this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants also respectfully request that the Court dismiss Counts IV and VI from Plaintiff's Complaint with prejudice and grant any other relief the Court deems appropriate.

Dated: October 15, 2018                                Respectfully submitted,

**MDSCRIPTS INC. and GARY MOUNCE**


   /s/    Brian A. Hartstein
            One of Its Attorneys

Brian A. Hartstein
Matthew A. Sloan
Quarles & Brady LLP
300 N. LaSalle St., Suite 4000
Chicago, IL  60654
312-715-5000
brian.hartstein@quarles.com
matthew.sloan@quarles.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** was filed electronically using the Court's CM/ECF system on October 15, 2018. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system at the e-mail addresses indicated below. Parties may access this filing through the Court's system:

> Steven S. Shonder
> The Law Offices of Steven S. Shonder
> 1 E. Wacker Drive
> Suite 2350
> Chicago, IL 60601-2000
> Email: Steve@ShonderLegal.com

> */s/ Brian A. Hartstein*
> Brian A. Hartstein