# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOAN SHAGES, | ) |
| | ) Case No. 18 CV 5395 |
| Plaintiff, | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) |
| MDSCRIPTS INC., a Florida corporation, | ) |
| and GARY MOUNCE, an individual | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION AND ORDER

Joan Shages, the plaintiff, filed a six-count complaint against her alleged former employers, MDScripts, Inc. ("MDScripts"), and Gary Mounce, its President and Chief Executive Officer, alleging a breach of contract claim and violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.; the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1 et seq.; and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115/1 et seq. The court has before it a motion to dismiss the complaint in part for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When deciding a motion to dismiss a complaint for failure to state a claim, the complaint's well-pleaded facts must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

1

According to the complaint, Mounce recruited Shages in 2014.  Compl. ¶ 17.  Shages requested a $75,000 annual salary.  Compl. ¶ 18.  Defendants agreed but structured her compensation package as $60,000 in base salary plus bonuses and profit sharing.  Compl. ¶ 19.  "MDScripts stated to [the plaintiff] that compensation would never be an issue at MDScripts and that 'raises, bonuses and profit sharing were frequent and generous if earned.'"  *Id.*  MDScripts also "promised that [Shages] would receive sick days and vacation pay."  *Id.*  Despite these promises, Shages did not receive bonuses or participate in MDScripts' profit sharing plan.  Compl. ¶¶ 23, 32, 33, 34, 79.  Mounce announced at a corporate retreat in July 2014 that MDScripts would be instituting a merit-based bonus system.  Compl. ¶ 25.  Shages did not complain because she felt confident that she would qualify for bonuses under the newly announced plan.  Compl. ¶ 25.

In July 2015 MDScripts transferred Shages to another position and reclassified her as an hourly employee.  Compl. ¶ 25.  About a year later, in June 2016, MDScripts assigned Shages to work on a project for a client, referred to as "CareHere."  *Id*.  The project was estimated to take 18 months to complete.  *Id*.  Shages completed the CareHere project three months early, and CareHere became the company's most successful client within a year.  *Id.*  The project required Shages to work substantial overtime, often more than 60 hours a week.  *See* Compl. ¶¶ 28, 30.  MDScripts told Shages "to not report her overtime on its time log but rather, to record her hours separately."  Compl. ¶ 26.  An MDScripts human resources manager warned Shages that she risked losing her job if she complained to Mounce.  Compl. ¶ 29.

MDScripts also told its employees in July 2017 that it was eliminating paid vacation time and that employees would be paid for their accrued vacation time.  Compl. ¶ 35.  Shages had accrued 190 hours of vacation time, but MDScripts did not pay her for it.  Compl. ¶ 36.  Shages

sent defendants a letter complaining of these practices on January 23, 2018. *See* Compl. Ex. A. Defendants fired her the next day. Compl. ¶ 39.

## Joint Employment

Shages sues Mounce in his individual capacity. Compl. ¶ 3. As Mounce acknowledges, Mem. Supp. Mot. to Dismiss 4, ECF No. 12, an individual and a company may be held liable for wage and hour violations as joint employers under the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 408–09 (7th Cir. 2007). Indeed, many courts have found corporate officers individually liable under the FLSA, IMWL, and IWPCA. *E.g.*, *Pietrzycki v. Heights Tower Serv. Inc.*, 290 F. Supp. 3d 822, 850–51 (N.D. Ill. 2017); *Natal v. Medistar, Inc.*, 221 F. Supp. 3d 999, 1003–04 (N.D. Ill. 2016); *Solis v. Int'l Detective & Protective Servs., Ltd.*, 819 F. Supp. 2d 740, 743 (N.D. Ill. 2011); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 646 (N.D. Ill. 2007). Mounce nevertheless maintains that the complaint does not include enough well-pleaded facts to permit the plausible inference that he employed Shages.

The FLSA's definition of "employer" reaches "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). The FLSA's definition of the verb "employ," includes "suffer or permit to work," which is "the broadest definition . . . ever included in any one act." *Reyes*, 495 F.3d at 408 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (other citation omitted). The IMWL and IWPCA contain similarly broad definitions of "employ" and "employer." *See* 820 ILCS 105/3(c), (d); 820 ILCS 115/2 (same definitions); *see also Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (discussing IWPCA's "broad" definition of employer). While these definitions may potentially differ on some issues, for purposes of determining joint employment they are

"materially the same." *Pietrzycki*, 290 F. Supp. 3d at 850 (citing *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 704 (N.D. Ill. 2016)).

The joint employment analysis requires consideration of the "economic reality" of the relationship between Mounce and Shages rather than "technical concepts." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961) (citations omitted). The "totality of 'the circumstances of the whole'" relationship must be considered. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1208 (7th Cir. 1986) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). The Seventh Circuit has not listed specific factors to guide this analysis. *Natal*, 221 F. Supp. 3d at 1003; *Morgan*, 625 F. Supp. 2d at 649. Courts in the Seventh Circuit have identified several relevant factors, such as "'whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Pietrzycki*, 290 F. Supp. 3d at 850 (quoting *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015)); *see also Vill. of Winfield v. Ill. State Labor Relations Bd.*, 678 N.E.2d 1041, 1044 (Ill. 1997) (listing similar factors considered under Illinois' joint employment test); *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 904 (Ill. 2005) (applying test to IWCPA claim).

The complaint here pleads a plausible joint employment claim against Mounce. Under the flexible economic reality analysis, a defendant who did not supervise the employee's day-to-day activities may nevertheless be individually liable depending on the control the defendant had over the alleged violation. *Natal*, 221 F. Supp. 3d at 1003 (citing *Afanassov v. VorBroker*, 2002 WL 1400534, at *1 (N.D. Ill. June 27, 2002)); *Morgan*, 625 F. Supp. 2d at 646. Shages must plead facts raising the inference of joint employment above the speculative level; she does not

need to plead every fact she intends to prove at trial. Shages alleges generally[1] that "Defendant Gary Mounce is the President and CEO of MDScripts who exercised operational control over its employees, including [the plaintiff], and had the power to hire and fire them, the ability to supervise them, and the power to set wages for them." Compl. ¶ 3. Shages backs up these general allegations with well-pleaded facts. According to the complaint, Mounce recruited Shages from a customer after becoming impressed with her knowledge of MDScripts' software. Compl. ¶ 16. And he personally negotiated the terms of her compensation package. *See id.* ¶¶ 16–19. With favorable inferences, those allegations demonstrate Mounce's hands-on involvement in employment decisions and day-to-day operations. Further, Mounce promised Shages a specific level of total compensation, $75,000 a year. *See* Comp. ¶¶ 16–19. He renewed his promise of bonuses throughout Shages' employment, suggesting that he had control over setting compensation. *See* Compl. ¶¶ 31, 79.

This is sufficient, but the complaint pleads still more. Shages alleges that MDScripts' human resources manager warned her that she risked losing her job if she complained to Mounce about the long hours she was working. Compl. 7. The manager might have said that Mounce could do nothing about the hours she worked and the overtime she received because the manager, or someone else in the company, had the power to control those things. *See Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *4 (N.D. Ill. Apr. 29, 2013) (dismissing complaint because allegations showed that defendant did not participate in decision on whether to increase the plaintiffs' pay). Instead, when Shages wrote Mounce about her complaints and she was fired the

---

[1] Mounce labels paragraph three as a recital of the legal conclusion that Mounce was a joint employer. Mem. Supp. Mot. to Dismiss 5. This is of no moment because, as explained in the text, other allegations in the complaint fill any gaps left by ¶ 3. Even so, the fact that Mounce served as MDScripts' Chief Executive Officer is not a legal conclusion. Titles alone rarely demonstrate a defendant's involvement in particular employment practices or a particular decision. *See Brunner v. Liautaud*, 2015 WL 1598106, at *4 (N.D. Ill. Apr. 8, 2015). They can form a link in the chain of well-pleaded facts supporting a plausible claim of joint employment, however.

next day, it can be inferred that Mounce was demonstrating his power to control hiring, firing, hours, and compensation. Compl. ¶¶ 37–39.

Taken together and in the light most favorable to Shages, the complaint's well-pleaded facts raise a plausible inference that Mounce and MDScripts jointly employed Shages, at least with respect to the violations she alleges. Mounce's motion to dismiss is denied.

### Breach of Contract And IWPCA Claims

Mounce and MDScripts also move to dismiss Shages' IWPCA and breach of contract claims. They argue that Shages did not have an enforceable contractual right to be paid $75,000 a year on the well-pleaded facts alleged in the complaint. Defendants also argue that the FLSA preempts Shages' breach of contract claims.

**A. Preemption**

The court considers defendant's preemption argument first. The Supremacy Clause, U.S. Const. Art. VI, Cl. 2, gives Congress the power to preempt state law "either by express provision, by implication, or by a conflict between federal and state law." *Augutis v. United States*, 732 F.3d 749, 753 (7th Cir. 2013) (quoting *Frank Bros., Inc. v. Wis. Dep't of Trans.*, 409 F.3d 880, 885 (7th Cir. 2005)). Defendants recognize that only implied preemption is at issue here. *See* Mem. Supp. Mot. to Dismiss 11–13 (citing implied preemption cases). In the absence of an express preemption provision in a federal statute, courts assume that Congress did not intend to preempt state law. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (citations omitted); *Augutis*, 732 F.3d at 753. The "ultimate touchstone" when determining the scope of a federal statute's preemptive effect is Congress' intent. *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1298 (2016) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).

Congress made its intent clear in the FLSA itself. As defendants recognize, the FLSA contains no preemption clause. *See Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010). But Congress was not silent on the subject of the FLSA's interaction with state law. As interpreted in binding authority, Congress stated explicitly in § 218(a) that the FLSA leaves states free to set higher hourly minimum pay rates or shorter periods before overtime must be paid. *Spoerle*, 614 F.3d at 429 (citing 29 U.S.C. § 218(a)). That is, the FLSA's sets a "floor" for wages and hours below which no state can go. *Id.* at 430.

Defendants cite a number of nonbinding cases holding that the FLSA preempted duplicative state law claims for payment of minimum wages and overtime hours. *See* Mem. Supp. Mot. to Dismiss 11–13. In *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), for instance, the plaintiff brought fraud and breach of contract claims under North Carolina law. The FLSA preempted those claims because they "require[d] the same proof as claims asserted under the FLSA itself." *Id.* at 193; *see also id.* at 193–95. Courts in the Seventh Circuit have reached essentially the same conclusion regarding duplicative FLSA and breach of contract claims. *See, e.g., Kyriakoulis v. DuPage Health Ctr., Ltd.*, 2011 WL 2420201, at *1–2 (N.D. Ill. June 9, 2011); *Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, at *14–16 (N.D. Ill. Oct. 4, 2010) (state law claims were "merely duplicative" of FLSA claims) (citing, inter alia, *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227–28 (D. Utah 2002). But where parties contract to provide more protection than the FLSA requires, the claims can coexist. *Atlanta Prof'l Firefighters Union v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991) (breach of contract claim not preempted because contract required employer to treat certain days as holidays but the FLSA did not); *Albee v. Vill. of Bartlett*, 861 F. Supp. 680, 691 n.23 (N.D. Ill. 1994). Permitting contracts that arguably obligate the employer to do more than the FLSA requires accords with

the Seventh Circuit's reading of the FLSA as setting a floor with an unlimited ceiling. *See Spoerle*, 614 F.3d at 430. The court therefore compares the contractual right Shages seeks to enforce to the minimum hours and wages the FLSA sets.[2] To show that her breach of contract claim duplicates her statutory claims, defendants point to the complaint's request for "unpaid wages" as contract damages, but this request must be read in context. *See* Compl. 15 (prayer for relief). Shages separately alleges three times that defendants promised to pay "an annual salary, plus profit sharing and bonuses that met or exceeded $75,000." Compl. ¶¶ 76, 77, 78. In context, then, Shages' request for unpaid wages as contract damages must be understood as referring to the $75,000 or more in annual compensation she claims to be owed. Understood this way, nothing about Shages' claim interferes with the FLSA's minimum wage and hour rules. Shages pleads that she stands to recover more than the FLSA requires on her breach of contract claim. She does not say how many hours of overtime she worked during the CareHere project, but she estimates at least 60 hours a week. *See* Compl. ¶¶ 28–29. If Shages were paid a total of $75,000 a year for 60-hour work weeks, her pay rate would not fall below the federal floor set by the FLSA.[3] Thus, nothing in Shages' breach of contract claim interferes with the "accomplishment and execution of the full purposes and objectives of Congress" in the FLSA. *Hughes*, 136 S. Ct. at 1298 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).

---

[2] This court need not, and therefore does not, embrace the reasoning of *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994). The Eleventh Circuit rejected preemption under *Avery* even though it determined that the employees' contractual rights were "no greater than their rights under the FLSA." *Id.* at 1348. As explained in the text of the complaint, Shages alleges that she has a contractual right to greater compensation than the FLSA requires.

[3] Assuming a 60-hour work week for 52 weeks, the hourly rate for a $75,00 salary would be $20.60.

8

B. **Existence of An Oral Contract**

The parties agree that Shages must allege the existence of a contract to state an IWPCA claim and a breach of contract claim.[4] *See Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568–69 (7th Cir. 2016) (citations omitted) (IWPCA); *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (breach of contract). The alleged agreement to pay Shages at least $75,000 a year arose from Mounce's verbal promises to Shages when he recruited her. *See* Compl. ¶¶ 18–19. Under Illinois law a contract to pay an employee a bonus may be enforced like any other contractual right. *See, e.g., McCleary v. Wells Fargo Sec., LLC*, 29 N.E.3d 1087, 1093–94 (Ill. Appt. Ct. 1st Dist. 2015); *DiLorenzo v. Valve and Primer Corp.*, 807 N.E.2d 673, 678–79 (Ill. App. Ct. 1st Dist. 2004); *see also Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1024–25 (7th Cir. 1998) (Indiana law). Defendants imply in their reply, without citing authority, that an oral contract to set bonuses is unenforceable. *See* Reply 3–4, ECF No. 14. Cases applying Illinois law demonstrate that there is nothing unique about an oral employment contract that includes a promise to pay a bonus; such an oral contract may be enforced like any other. *See, e.g., Schultze*, 83 N.E.2d at 1054–55; *Zabinsky*, 807 N.E.2d at 666; *Krieger v. Adler, Kaplan & Begy*, 1997 WL 323827, at *9 (N.D. Ill. June 11, 1997).

---

[4] The court does not need to decide whether the IWPCA invariably requires an enforceable contract. The IWPCA's definition of "final wages" requires payment of "compensation owed the employee by the employer pursuant to an employment contract *or* agreement between the 2 parties." 820 ILCS 115/2 (West 2008) (emphasis added). The Illinois Appellate Court has held that the distinction between the two words the IWPCA uses, a "contract" and "agreement," is significant. It has "recognized that a plaintiff must prove the existence of a valid and enforceable contract to recover under a breach of contract claim, but no such requirement exists to recover under the [IWPCA]." *See Schultze v. ABN AMRO, Inc.*, 83 N.E.2d 1053, 1059 (Ill. App Ct. 1st Dist. 2017) (citing *Landers–Scelfo v. Corp. Office Sys., Inc.*, 827 N.E.2d 1051, 1068 (Ill. App. Ct. 3d Dist. 2005)); *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 672 (Ill. App. Ct. 1st Dist. 2004) ("An 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract.") (citations omitted)). This court need not explore the distinction between contracts and agreement under the IWPCA further because no party here argues that the distinction affects the outcome, and the complaint states a breach of contract claim.

Defendants next assert that ¶ 19 of the complaint establishes that MDScripts retained complete discretion over whether to pay Shages any bonus or profit sharing. The paragraph states in full:

> MDScripts agreed to pay $75,000, but based on a $60,000 base salary, with the difference made up in in bonuses and profit sharing. MDScripts stated to [the plaintiff] that compensation would never be an issue at MDScripts and that "raises, bonuses and profit sharing were frequent and generous if earned." MDScripts also promised that Joan would receive sick days and vacation pay.

Comp. ¶ 19. Defendants emphasize the qualifier, "if earned." They read the qualifier as applying to the whole paragraph. Defendants compare Mounce's alleged statements to an offer letter. An offer letter's statement that an employee will be "eligible" for a "discretionary" bonus does not give the employee an enforceable contractual right to receive a bonus in a fixed amount. *Instant Tech. LLC v. DeFazio,* 793 F.3d 748, 755 (7th Cir. 2015); *Lillien v. Peak6 Inv., LP*, 417 F.3d 667, 670 (7th Cir. 2005).

But read favorably to Shages, the complaint alleges that Mounce unequivocally promised to pay her compensation totaling $75,000 a year. The complaint must be construed in the light most favorable to the plaintiff when deciding a Rule 12(b)(6) motion. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (citing *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010)). To state a claim, the complaint must set forth the "essential terms" of an oral contract, not a transcript of the negotiations. *See Hytel Grp., Inc. v. W.L. Gore & Assoc., Inc.*, 2004 WL 524440, at *4 (N.D. Ill. 2004) (citing *Richco Plastic Co. v. IMS Co.*, 681 N.E.2d 56, 59 (Ill. App. Ct. 1st Dist. 1997)); *Martin–Trigona v. Bloomington Fed. Sav. & Loan Assoc.*, 428 N.E.2d 1028, 1031 (Ill. App. Ct. 1st Dist. 1981). With the benefit of a construction favorable to Shages, the first sentence of ¶ 19 sets forth the terms to which both parties agreed– paying $75,000 a year. The balance of ¶ 19 describes how Mounce assured Shages that the

promise would be kept. Defendants call this negotiating puffery, but to label Mounce's alleged promise puffery would be to view the complaint favorably to defendants, which is impermissible. Construed favorably to Shages, the complaint states that to address Shages' possible concerns over not receiving a bonus, Mounce told Shages that bonuses were discretionary, and he promised that Shages would receive one. *See Tidwell v. Toyota Auto Mart, Inc.,* 375 N.E.2d 540, 543 (Ill. App. Ct. 2d Dist. 1978). Thus, Mounce's alleged promise to exercise his discretion to award Shages a salary and a bonus totaling $75,000, a sum certain, distinguishes his promise from an offer letter telling an employee that she will be eligible for a discretionary bonus if she satisfies certain criteria. *Cf. Lillien*, 417 F.3d at 670.

Defendants alternatively argue that Shages lost any contractual right to be paid a $75,000 salary later in 2014. They point to the allegations that Mounce announced at a corporate retreat in July 2014 that MDScripts was switching to a system of merit-based bonuses. *See* Compl. ¶ 25. Assuming for the sake of argument that defendants are correct about the effect of switching to a merit-based bonus system, Shages nevertheless states a claim for breach of the duty of good faith and fair dealing.

An employer who abuses its contractual discretion to pay a bonus may be liable for violating the covenant of good faith and fair dealing implied in the employment contract. *Wilson v. Career Educ. Corp. ["Wilson I"]*, 729 F.3d 665, 675, 681 (7th Cir. 2013) (concurring opinions of Hamilton, J., and Darrow, J., agreeing on this point) (citations omitted); *McCleary*, 29 N.E.3d at 1094. The duty of good faith and fair dealing "is not a version of the Golden Rule," and an employer may be "thoughtless, nasty, and mistaken" without violating the duty. *Wilson v. Career Educ. Corp. ["Wilson II"]*, 844 F.3d 686, 688 (7th Cir. 2016) (quoting *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 438 (7th Cir. 1987)); *see also Tatom v. Ameritech Corp.*, 305 F.3d

737, 745–46 (7th Cir. 2002). Truly opportunistic behavior, however, such as contriving an "arbitrary" excuse to avoid paying bonuses, may be actionable. *Wilson II*, 844 F.3d at 689.

The complaint here states a plausible claim that defendants acted opportunistically to deny Shages promised bonuses. Mounce's reasons for changing to a merit-based bonus system are not clear. *See* Comp. ¶ 25. He announced the switch the same year he hired Shages, however. *See id.* ¶¶ 18, 25. From this timing and defendants' alleged subsequent threats and nonpayment of bonuses for which Shages apparently qualified, it is plausible to infer that the change was an effort to avoid paying Shages the full annual compensation Mounce promised. *See id.* The complaint alleges specifically that defendants refused to pay Shages bonuses even though she met or exceeded MDScripts' performance standards. *See* Compl. ¶¶ 31–34. She substantiates those broad allegations with specific examples of excellent performance on the CareHere project, which she finished three months ahead of schedule. Shages "exceeded all site build, dispensing[,] and revenue expectations. [The] account grew to be the number one organization within MDScripts in its first year." Compl ¶ 25. The thrust of these allegations is that defendants arbitrarily changed the bonus criteria to avoid paying bonuses for which Shages would have been otherwise eligible. *See Wilson I*, 729 F.3d at 681; *McCleary*, 29 N.E.3d at 1094. Hence, the complaint states a plausible claim that defendants violated the implied duty of good faith and fair dealing by withholding discretionary bonuses.

## Conclusion

For the reasons stated, defendant's motion to dismiss the complaint for failure to state a claim is denied.

Date: May 31, 2019            /s/
                                                     Joan B. Gottschall
                                                     United States District Judge